UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTOPHER D. ARIOLA,

                              Plaintiff,

                                                      9:04-CV-1262
v.                                                    (DNH/GHL)

ONONDAGA COUNTY SHERIFF'S DEPARTMENT,
JOHN DOE; GARY SMITH, P.S.W.A.;
DR. MARILYN S. WARD; DR. JOSE L. MASSA;
PATRICK SCHAUBROECK, C.W.,

                              Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

CHRISTOPHER D. ARIOLA, 02-B-2553
    Plaintiff, *Pro Se*
Great Meadow Correctional Facility
P.O. Box 51
Comstock, New York 12821-0051

HON. ANTHONY P. RIVIZZIGNO                            KATHLEEN M. DOUGHERTY
ONONDAGA COUNTY ATTORNEY                              Deputy County Attorney
    Counsel for Named Defendants
421 Montgomery Street
Syracuse, New York 13202

GEORGE H. LOWE, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION</u>

        This action has been referred to me for Report and Recommendation by the Honorable

David N. Hurd, United States District Judge, pursuant to Local Rule 72.3(c) and 28 U.S.C. §

636(b).  Plaintiff, Christopher D. Ariola ("Plaintiff"), an inmate at Great Meadow Correctional

Facility ("Great Meadow C.F."), commenced this *pro se* action against the Onondaga County

Sheriff's Department and five employees of Onondaga County ("Defendants"), pursuant to 42

U.S.C. § 1983.  (Dkt. No. 10 [Plf.'s Am. Comp.].)  Generally, Plaintiff alleges that Defendants

violated Plaintiff's rights under the First, Fifth, Eighth, and/or Fourteenth Amendments while he

was detained before trial at the Onondaga County Justice Center between March of 2001 and

August of 2001.  (*Id.*)  Currently pending before the Court are four motions: (1) Defendants'

motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 22); (2) Plaintiff's motion for a

subpoena and/or order directing service of Plaintiff's Amended Complaint on Defendant Massa

(Dkt. No. 24); (3) Plaintiff's motion for a stay of the Court's decision on Defendants' motion to

dismiss (Dkt. No. 23); and (4) Plaintiff's motion for the appointment of counsel (Dkt. No. 23).

For the reasons that follow, I recommend that Defendants' motion be granted, and I deny each of

Plaintiff's three motions.

## I.      LEGAL STANDARD

### A.      Standard on a Motion to Dismiss

A defendant may move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P.

12(b)(6).  To prevail on a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon

which relief can be granted," a defendant must show "beyond doubt that the plaintiff can prove

no set of facts in support of his claim [that] would entitle him to relief,"[1] or the defendant must

---

[1]      *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (citations omitted); *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.") (internal quotations and citation omitted).

show that the plaintiff's claim "fails as a matter of law."[2]  Thus, a defendant may base a Rule

12(b)(6) motion on either or both of two grounds: (1) a challenge to the "sufficiency of the

pleading" under Rule 8(a)(2);[3] or (2) a challenge to the legal cognizability of the claim.[4]

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim

---

[2]       *Phelps v. Kapnolis*, 308 F.3d 180, 187 (2d Cir. 2002) (citing *Estelle v. Gamble*,
429 U.S. 97, 108, n.16 [1976].)

[3]       *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed.
2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the
sufficiency of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v.
Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the
formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P.
8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v.
Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests
the formal legal sufficiency of the complaint, determining whether the complaint has conformed
to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled
to relief.'").

[4]       *See Swierkiewicz* 534 U.S. at 514 ("These allegations give respondent fair notice
of what petitioner's claims are and the grounds upon which they rest. . . .  In addition, they state
claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v.
McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice
requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim
upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of
course, none of this is to say that a court should hesitate to dismiss a complaint when the
plaintiff's allegation . . . fails as a matter of law.") (citation omitted); *Kittay v. Kornstein*, 230
F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s
requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient
information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab.
Litig.*, 2005 U.S. Dist. LEXIS 6686 (S.D.N.Y. Apr. 20, 2005) ("Although Rule 8 does not require
plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim.") (citation
omitted); *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS
23314, *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause
of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord,
Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v.
Mako's, Inc.*, 01 Civ. 4430, 2002 U.S. Dist. LEXIS 1658, *6-7 (S.D.N.Y. Jan. 30, 2002)
(identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the
sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the
claims).

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although Rule 8(a)(2) does not require a pleading to state the elements of a prima facie case,[5] it does require the pleading to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[6]  The purpose of this rule is to "facilitate a proper decision on the merits."[7]  A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[8]

The Supreme Court has characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has rejected judicially established pleading requirements that exceed this liberal requirement.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-514 (2002) (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").  However, even this liberal notice

---

[5]     *See Swierkiewicz* 534 U.S. at 511-512, 515.

[6]     *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley*, 355 U.S. at 47); *see also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leathernman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[7]     *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (quoting *Conley*, 355 U.S. at 48).

[8]     *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

pleading standard "has its limits."[9]

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[10]  "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[11]  Indeed, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[12]  Similarly, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint

---

[9]    2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003); *see, e.g., Dura Pharmaceuticals*, 125 S. Ct. at 1634-1635 (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir. 2004).  Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

[10]    *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) (citation omitted); *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[11]    *Hernandez*, 18 F.3d at 136 (citation omitted); *see also Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (citations omitted); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) (citation omitted).

[12]    *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

gives any indication that a valid claim might be stated."[13]

However, "all normal rules of pleading are not absolutely suspended."[14]  For example, an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[15]  Moreover, there are circumstances when the extra leniency afforded to the pleadings (and motion papers) of a *pro se* litigant may be denied.

### B.    Denial of "Special Solicitude" to Overly Litigious *Pro Se* Litigants

"[T]here are circumstances where an overly litigious inmate, who is quite familiar with the legal system and with pleading requirements, may not be afforded such special solicitude."[16]

---

[13]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").  Of course, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading.

[14]     *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980) (citations omitted), *accord*, *Gil v. Vogilano*, 131 F. Supp.2d 486, 491 (S.D.N.Y. 2001).

[15]     *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) (citation omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted).

[16]     *See, e.g.*, *Gill v. Frawley*, 02-CV-1380, 2006 WL 1742738, at *3 & n.2 (N.D.N.Y. June 22, 2006) (McAvoy, J; Lowe, M.J.) (plaintiff had filed at least 20 actions in Northern District of New York and five other actions in Southern District of New York); *Davidson v. Talbot*, 01-CV-0473, 2005 U.S. Dist. LEXIS 39576, at *19 & n.10 (N.D.N.Y. March 31, 2005) (Treece, M.J.) (plaintiff had filed 20 actions in the Northern District of New York alone); *Gill v. Riddick*, 03-CV-1456, 2005 U.S. Dist. LEXIS 5394, at *7 & n.3 (N.D.N.Y. March 31, 2005) (Treece, M.J.) (plaintiff had filed 20 actions in Northern District alone of New York); s*ee also Johnson v. Eggersdorf*, 8 Fed. Appx. 140, 143 (2d Cir. May 17, 2001) (unpublished opinion) (plaintiff at one point had 12 simultaneously pending lawsuits in Northern District alone), *aff'g*, 97-CV-0938, Decision and Order (N.D.N.Y. May 28, 1999) (Kahn, J.), *adopting*, 97-CV-0938, Report-Recommendation, at 1, n.1 (N.D.N.Y. Apr. 28, 1999) (Smith, M.J.); *Johnson v. C.*

I note that, in such cases, the overly litigious inmate is not being denied this special solicitude or status as a form of punishment for his litigiousness but as a form of recognition of his obvious litigation experience (and the lack of need for special solicitude or status).[17]

Here, several factors exist weighing in favor of denying Plaintiff the special solicitude or status normally afforded *pro se* litigants.  First, Plaintiff has considerable legal experience.  In addition to the current action, Plaintiff has filed five other actions or appeals in federal or state court.[18]  Second, the motion papers that Plaintiff has submitted in this action (like the motion

---

*Gummerson*, 201 F.3d 431 (2d Cir. 1999) (plaintiff at one point had 12 simultaneously pending lawsuits in Northern District alone), *aff'g*, 97-CV-1727, Decision and Order (N.D.N.Y. June 11, 1999) (McAvoy, J.), *adopting*, 97-CV-1727, Report-Recommendation (N.D.N.Y. April 28, 1999) (Smith, M.J.); *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994) (plaintiff at one time had at least 30 simultaneously pending lawsuits); *Davidson v. Dean*, 204 F.R.D. 251, 257 (S.D.N.Y. 2001) (plaintiff at one point had 30 simultaneous pending suits); *Santiago v. C.O. Campisi*, 91 F. Supp.2d 665, 670 (S.D.N.Y. 2000) (plaintiff had 10 suits pending in district); *McGann v. U.S.*, 98-CV-2192, 1999 WL 173596, at *2, 8-10 (S.D.N.Y. March 29, 1999) (court found 79 reported decisions of cases that plaintiff had filed during previous 43 years); *Brown v. McClellan*, 93-CV-0901, 1996 U.S. Dist. LEXIS 8164, at *3-4, & n.3, 1996 WL 328209 (W.D.N.Y. 1996) (plaintiff had filed seven previous lawsuits against prison officials); *Brown v. Selsky*, 93-CV-0268, 1995 U.S. Dist. LEXIS 213, at *2, n.1, 1995 WL 13263 (W.D.N.Y. Jan. 10, 1995) (plaintiff had seven cases pending in district).

[17]      *See*, *supra*, note 16 of this Report-Recommendation (citing cases discussing rationale for denying special status to overly litigious *pro se* litigants).

[18]      Specifically, those actions or appeals are as follows:
(1) *Ariola v. Stone*, 05-CV-0830, Order of Dismissal (W.D.N.Y. filed May 12, 2006) (civil rights action, transferred from on Nov. 22, 2005 from N.D.N.Y., 05-CV-1202);
(2) *Ariola v. Stone*, 05-CV-0830, Notice of Appeal to Second Circuit (W.D.N.Y. filed May 25, 2006);
(3) *Ariola v. Greene*, Judgment (Supreme Court, Washington County filed Aug. 17, 2005) (denying Plaintiff's petition for *habeas corpus*);
(4) *Ariola v. Greene*, 814 N.Y.S.2d 342 (3d Dept. 2006) (affirming denial of Plaintiff's *habeas corpus* petition by Supreme Court, Washington County ); and
 (5) *Ariola v. Greene*, No. 648, 2006 N.Y. LEXIS 2083 (N.Y. July 6, 2006) (denying motion for leave to appeal decision by Third Department).

papers he submitted in his action before the United States District Court for the Western District of New York) have generally been fairly good–being typed, containing legal memoranda, attaching exhibits, etc.[19]  Third, apparently for part or all of this action Plaintiff has benefitted from the legal assistance of "jailhouse lawyer's [sic]," as he puts it.[20]

However, I am mindful of several facts: (1) in addition to proceeding *pro se*, Plaintiff is asserting several serious civil rights violations (an independent reason for granting special solicitude or status to a litigant); (2) although Plaintiff has litigation experience, almost uniformly the claims and arguments he has asserted in his legal proceedings have been rejected as without merit, due in large part to his inability to craft a cognizable legal claim;[21] and (3) Plaintiff has (at least in the past) labored under the effects of mental illness.  Therefore, after carefully considering the matter, I do not believe it would be appropriate to deny Plaintiff the special solicitude or status normally afforded *pro se* litigants.

---

[19]     (*See*, *e.g.*, Dkt. No. 25 [Plf.'s Response Papers, attaching memorandum of law that is typed, contains legal citations, and attaches exhibits].)

[20]     (Dkt. No. 25, Mem. of Law, ¶ 13 [Plf.'s Response Papers].)  *See* John C. Rothermich, "Ethical and Procedural Implications of "Ghostwriting" for *Pro Se* Litigants: Toward Increased Access to Civil Justice," 67 *Fordham L. Rev.* 2687, 2697 (Apr. 1999) (arguing that, when the papers of a *pro se* litigant are "ghostwritten" by a legal assistant, the "special leniency" normally afforded to *pro se* litigants is "unwarranted") [citations omitted].

[21]     For example, Plaintiff's original Complaint in this action was conditionally dismissed by Judge Hurd for failure to state a claim.  (Dkt. No. 6.).  In addition, Plaintiff's complaint in the *Ariola v. Stone* matter (before the Western District or New York) was dismissed for failure to state a claim.  *Ariola v. Stone*, 05-CV-0830, Order of Dismissal at 2-7 (W.D.N.Y. filed May 12, 2006).  I note that Plaintiff has at least one "strike" against him for purposes of 28 U.S.C. § 1915(g)'s "three strikes" rule.  *Ariola v. Stone*, 05-CV-0830, Order of Dismissal at 7-8 (W.D.N.Y. filed May 12, 2006) (dismissing Plaintiff's Complaint for failure to state a claim, and characterizing any appeal by Plaintiff from that dismissal as being so lacking in merit as to not be taken in "good faith" for purposes of 28 U.S.C. § 1915[g]).

## II.     PLAINTIFF'S AMENDED COMPLAINT

Because of Plaintiff's special status as a *pro se* litigant, I construe the allegations of his

Amended Complaint in light of the assertions contained in his papers in response to Defendants'

motion.[22]  Liberally construed, those allegations assert three causes of action.  (*See generally* Dkt.

Nos. 10, 25.)

### A.     First Cause of Action

Plaintiff's First Cause of Action alleges that Defendants Onondaga County Sheriff's

Department and John Doe violated Plaintiff's due process rights under the Fifth and/or

Fourteenth Amendments by wrongfully denying (on or before March 10, 2001) Plaintiff's request

(made at some point between March 2, 2001 and March 10, 2001) to be permitted to leave the

Onondaga County Justice Center so he could attend his father's funeral, following Plaintiff's

arrest and detention (on March 3, 2001) for allegedly causing that death (on March 2, 2001).[23]

Specifically, Plaintiff alleges that the Defendant Onondaga County Sheriff's Department

(1) did not have the discretion to deny his request, such discretion lying only with the

---

[22]     "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."  *Gadson v. Goord*, 96 Civ. 7544, 1997 WL 714878, *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia*, *Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) (citations omitted), *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).

[23]     (Dkt. No. 10, ¶¶ 4, 5, 10, 14, 17, 18, 37-39, and "First Cause of Action" [Plf.'s Am. Compl.]; Dkt. No. 25, Mem. of Law, ¶¶ 6, 19-22, 24, 32-36, 52-54 [Plf.'s Response Papers].)

"Commission" (i.e., the New York State Commission of Correction), as set forth by N.Y.

Correction Law § 509, (2) did not have, or offer, an adequate reason for its denial of Plaintiff's

request, (3) did not issue Plaintiff a written decision when it denied his request, (4) did not

provide him an adequate opportunity to appeal or grieve that denial before the funeral, and (5)

was "grossly negligent" in supervising Defendant John Doe.[24]

With respect to Defendant John Doe, Plaintiff alleges that this unnamed sheriff's

deputy–who was in charge of the "Undertaking Visitation" Program at the Onondaga County

Justice Center during the time in question--maliciously, deliberately or negligently denied

Plaintiff's request to attend his father's funeral, without promptly stating a sufficient reason for

that denial in writing and without providing a procedure through which Plaintiff could

meaningfully appeal that denial before the funeral.[25]

### B.    Second Cause of Action

Plaintiff's Second Cause of Action alleges that Defendants Gary Smith (a social worker)

and Patrick Schaubroeck (a social worker) violated Plaintiff's rights under the Fourth, Fifth,

Eighth and/or Fourteenth Amendments in several ways during his detention in the Onondaga

Justice Center between March 3, 2001 and August 31, 2001.[26]

First, Plaintiff alleges that, at various points between March 3, 2001 and August 23, 2001,

Defendants Smith and Schaubroeck intentionally or recklessly breached the confidentiality of

---

[24]    (*Id.*)

[25]    (Dkt. No. 10, ¶¶ 5, 10, 14, 38 [Plf.'s Am. Compl.];  Dkt. No. 25, Mem. of Law, ¶¶ 6, 19, 21, 22, 24, 34-36, 52, 54 [Plf.'s Response Papers].)

[26]    (Dkt. No. 10, ¶¶ 6, 7, 19-22, 40-46, 50-52, and "Second Cause of Action" [Plf.'s Am. Compl.]; Dkt. No. 25, Mem. of Law, ¶¶ 6, 25, 26, 37-43 [Plf.'s Response Papers].)

certain information about Plaintiff (which was protected by N.Y. C.P.L.R. § 4508) by communicating that information to Defendants Ward and/or Massa.[27]

Second, Plaintiff alleges that, at some point, Defendant Schaubroeck, with malice or gross negligence, released confidential information about Plaintiff (without authorization and out of context) to the Syracuse *Post-Standard*, which published the information, causing Plaintiff "severe public ridicule and ostrazation [sic] that could endure forever."[28]

Third, Plaintiff alleges that, upon Plaintiff's admission to the Onondaga County Justice Center on March 3, 2001, Defendant Smith, with malice or gross negligence, "coerced" Plaintiff to take a "mind changing" medication called "Sinequan."[29]

## C.    Third Cause of Action

Plaintiff's Third Cause of Action alleges that Defendants Marilyn Ward (a psychiatrist) and Jose Massa (a psychiatrist) violated Plaintiff's rights under the First, Fourth, Fifth, Eighth and/or Fourteenth Amendments during his detention in the Onondaga Justice Center between March 3, 2001 and August 31.[30]

Specifically, Plaintiff alleges that, on August 23, 2001, Defendants Massa and Ward (1) violated the confidentiality of Plaintiff's communications to them, which communications were protected from disclosure by N.Y. C.P.L.R. § 4507, (2) maliciously, deliberately or negligently

---

[27]    (Dkt. No. 10, ¶¶ 6, 7, 19-22, 44-46, 50-52, and "Second Cause of Action" [Plf.'s Am. Compl.]; Dkt. No. 25, Mem. of Law, ¶¶ 6, 25, 26, 37-43 [Plf.'s Response Papers].)

[28]    (Dkt. No. 10, ¶¶ 50-52 and "Second Cause of Action [Plf.'s Am. Compl.].)

[29]    (Dkt. No. 10, ¶¶ 40-43, 52 [Plf.'s Am. Compl.].)

[30]    (Dkt. No. 10, ¶¶ 8, 9, 46-49 and "Third Cause of Action" [Plf.'s Am. Compl.]; Dkt. No. 25, Mem. of Law, ¶¶ 6, 27-30, 44-51 [Plf.'s Response Papers].)

mischaracterized Plaintiff's mental condition (and religious beliefs) in order to find him

incompetent, and (3) conducted Plaintiff's mental competency examination (pursuant to N.Y.

C.P.L. § 730.30) in a "biased" or negligent manner, for example by using confidential

information about Plaintiff communicated in breach of Plaintiff's rights under N.Y. C.P.L.R. §

4508 and N.Y. Mental Hygiene Law § 33.16.[31]

## III.   ANALYSIS

In support of their motion to dismiss, Defendants advance five arguments.  First,

Defendants argue that Plaintiff's claims should be dismissed because they are barred by the

applicable statute of limitations.[32]  Second, Defendants argue that, in the alternative, Plaintiff's

claims should be dismissed because they are too general and conclusory to give Defendants "fair

notice" under Fed. R. Civ. P. 8–e.g, they fail to allege with factual specificity the personal

involvement of any individual Defendant, the existence of an allegedly unconstitutional

municipal policy or custom, or the existence of a privilege whose violation was proscribed by the

Constitution.[33]  Third, Defendants argue that, in the alternative, Plaintiff's claims should be

dismissed because they are not cognizable under 42 U.S.C. § 1983–i.e., Plaintiff had no due

process right to attend his father's funeral, nor did Plaintiff have a constitutional right to non-

disclosure of any communications with social workers or psychiatrists.[34]  Fourth, Defendants

argue that, in the alternative, Plaintiff's claims against the Defendant Onondaga County Sheriff's

---

[31]     (*Id*.)

[32]     (Dkt. No. 22, Part 3, at 5-7 [Defs.' Mem. of Law].)

[33]     (*Id*. at 8-9.)

[34]     (*Id*. at 10-12.)

Department should be dismissed because Plaintiff has failed to allege the existence of a municipal policy or custom sufficient to impute the liability of any individual Defendant to the County.[35]  Fifth, Defendants argue that, in the alternative, Plaintiff's claims should be dismissed because Defendants are protected by the doctrine of qualified immunity.[36]

Rather than address these arguments sequentially, I will address what I believe to be the strongest argument first.

### A.   Whether Plaintiff's Claims Should Be Dismissed as Not Cognizable Under 42 U.S.C. § 1983

#### 1.   Plaintiff's First Cause of Action

Defendants are correct that N.Y. Correction Law § 509 does not confer on New York State inmates a right (to attend the funeral of a relative) that is protected by any constitutional provision (or federal law) for purposes of 42 U.S.C. § 1983.[37]  *Allen v. Senkowski*, 95-CV-1499, 1997 WL 570691, at *1, 2 (N.D.N.Y. 1997) (Pooler, J., adopting Report-Recommendation of Scanlon, M.J.).[38]

In arguing that N.Y. Correction Law § 509 confers on him various due process rights,

---

[35]      (*Id*. at 13-16.)

[36]      (*Id*. at 16-17.)

[37]      (*Id*. at 11.)

[38]      *See also Verrone v. Jacobson*, 95-CV-10495, 1999 WL 163197, at *5 (S.D.N.Y. March 23, 1999); *Mercer v. Green Haven C.F.*, 94-CV-6238, 1998 WL 85734, at *3 (S.D.N.Y. Feb. 27, 1998); *Odom v. Coombe*, 95-CV-6378, 1998 WL 120361, at *3 (S.D.N.Y. March 18, 1998), *abrogated on other grounds by Jenkins v. Haubert*, 179 F.3d 19 (2d Cir. 1991); *Green v. Coughlin*, 94-CV-3356, 1991 WL 498808, at *1 (S.D.N.Y. 1991); *Cruz v. Sielaff*, 767 F. Supp. 547, 550 (S.D.N.Y. 1991); *Colon v. Sullivan*, 681 F. Supp. 222, 223 (S.D.N.Y. 1988).

Plaintiff fails to cite any case law contradicting or undermining this rather obvious point of law.[39]

In addition, Plaintiff mischaracterizes N.Y. Correction Law § 509 as providing that the "rules and regulations" of the New York State Commission of Correction limit the authority of a sheriff to *deny* an inmate's request to attend a relative's funeral.[40]  To the contrary, N.Y. Correction Law § 509 provides that the "rules and regulations" of the New York State Commission of Correction limit the authority of a sheriff to *grant* an inmate's request to attend a relative's funeral (e.g., in order to guard against the inmate's escaping from custody during his absence from the institution).[41]  Plaintiff's claim that he had a right to attend his father's funeral is particularly frivolous when one considers that Plaintiff alleges that he had, at the time, been charged with the homicide of his father (a charge of which he was subsequently convicted).[42]

As a result, I recommend that the Court dismiss Plaintiff's First Cause of Action for failure to state a claim.[43]  Because Plaintiff has already been granted two opportunities to amend

---

[39]        (*See* Dkt. No. 25, Mem. of Law, ¶¶ 32-36 [Plf.'s Response Papers].)

[40]        (*Id.*)

[41]        *See*  N.Y. Correction Law § 509 ("The Sheriff . . . may *permit* any inmate . . . to attend the funeral of [a relative] . . . but the exercise of such power shall be subject to such rules and regulations as the [New York State Commission of Correction] shall prescribe, respecting the *granting* of such permission, duration of absence from the institution, custody, transportation and care of the inmate, and guarding against escape.").

[42]        (*See*, *e.g.*, Dkt. No. 10, ¶¶ 3, 18, 26-28, 37, 40 [Plf.'s Am. Compl.].)

[43]        As to Plaintiff's claim against the Defendant "John Doe," I recommend that the Court dismiss this claim for three alternative reasons: (1) Plaintiff's failure to comply with a pre-trial order of the Court under Fed. R. Civ. 16(f) (*see* Dkt. No. 6 at 9 [Order of Judge Hurd filed 12/7/04, directing Plaintiff to "take reasonable steps to ascertain the identifies of any other individuals that purportedly violated plaintiff's civil and/or constitutional rights"]); (2) Plaintiff's failure to prosecute under Fed. R. Civ. P. 41(b) and N.D.N.Y. L.R. 41.2(a); and (3) Plaintiff's failure to serve within 120 days under Fed. R. Civ. 4(m).

this cause of action (through the filing of his Amended Complaint, and through the liberal

construction of his response papers as effectively amending the allegations of his Amended

Complaint), and because the defects in this cause of action are substantive (and not merely

formal), I recommend that this denial be with prejudice.[44]  In addition, because this cause of

action fails to state a claim and is indeed frivolous, I recommend that the Court indicate in the

Order of Dismissal that this dismissal constitutes a "strike" for purposes of 28 U.S.C. § 1915(g)'s

"three strikes" rule.[45]

### 2.    Plaintiff's Second Cause of Action

As described above, Plaintiff's Second Cause of Action contains three somewhat distinct

claims.  *See*, *supra*, Part II.B. of this Report-Recommendation.

With respect to Plaintiff's breach-of-privilege claim against Defendants Smith and

Schaubroeck,[46] Defendants are correct that N.Y. C.P.L.R. § 4508 does not somehow transform

the alleged disclosure of information about Plaintiff by two social workers employed by the

Onondaga County Justice Center into a violation of a right that is protected by any constitutional

provision (or federal law) for purposes of 42 U.S.C. § 1983.[47]

N.Y. C.P.L.R. § 4508 provides, in pertinent part: "Confidential information privileged.  A

person duly registered as a certified social worker . . . shall not be required to disclose a

---

[44]      *See*, *supra*, notes 13 & 15 of this Report-Recommendation.

[45]      *See*, *supra*, note 21 of this Report-Recommendation.

[46]      (Dkt. No. 10, ¶¶ 6, 7, 19-22, 44-46, 50-52, and "Second Cause of Action" [Plf.'s Am. Compl.]; Dkt. No. 25, Mem. of Law, ¶¶ 6, 25, 26, 37-43 [Plf.'s Response Papers].)

[47]      (Dkt. No. 22, Part 3, at 12-13 [Defs.' Mem. of Law].)

communication made by his *client* to him, or his advice given thereon, in the course of his

professional employment . . . ."  N.Y. C.P.L.R. § 4508(a) [emphasis added].

I do not even liberally construe Plaintiff's Amended Complaint as alleging facts

indicating that he was the "client" of the two social workers in question for purposes of N.Y.

C.P.L.R. § 4508(a).  In particular, I note that Plaintiff alleges that Defendants Smith and

Schaubroeck were *employees* of Onondaga County Correctional Medical and Behavioral Health

Services at the Onondaga County Justice Center,[48] where Plaintiff was *detained* (i.e., held against

his will) during the time in question.[49]  Indeed, Plaintiff alleges that, as soon as he arrived at the

Justice Center, Defendant Smith started "coerc[ing] Plaintiff against his will to take [the

medication] [S]inequan," and refusing Plaintiff's requests to be taken off the medication.[50]

Simply stated, I can conceive of no circumstances (consistent with the allegations of Plaintiff's

Amended Complaint) in which Plaintiff entertained a *reasonable* expectation of privacy with

regard to any of the information in question.  Several cases exist from within the Second Circuit

dismissing analogous Section 1983 claims.[51]

---

[48]    (*See*, *e.g.*, Dkt. No. 10, ¶¶ 6, 7 [Plf.'s Am. Compl.].)

[49]    (*See*, *e.g.*, Dkt. No. 10, ¶¶ 3, 4 [Plf.'s Am. Compl.].)

[50]    (Dkt. No. 10, ¶¶ 41-43 [Plf.'s Am. Compl.].

[51]    *See Port Washington Teacher's Assoc. v. Bd. of Educ. of Port Washington Union Free School Dist.*, 2006 WL 47447, at *3, 8 (E.D.N.Y. Jan. 4, 2006) (granting defendants' Rule 12[b][6] motion to dismiss Section 1983 claim regarding social workers' disclosure to parents of confidential information about students because social workers were employed by school district, and thus students were not "clients" of social workers under N.Y. C.P.L.R. § 4508); *Venable v. Goord*, 03-CV-4434, 2004 U.S. Dist. LEXIS 18275, at *11-15 (S.D.N.Y. Sept. 10, 2004) (granting defendants' Rule 12[b][6] motion to dismiss inmate's Section 1983 claim regarding prison counselor's disclosure of confidential information about inmate because inmate had no constitutional right of privacy to nondisclosure of that information); *Lewis v. City of New York*,

I note that the two state court cases cited by Plaintiff in his memorandum of law[52] are

clearly distinguishable in that (1) they do not address claims arising under 42 U.S.C. § 1983, and

(2) they involve circumstances in which the privilege was created due to (a) a person's voluntary

application for the services of the social worker and (b) the social worker's indication that the

person was a "client."  *See New York v. Bass*, 529 N.Y.S.2d 961, 961-962 (Sup. Ct., Bronx Co.

1988) (criminal defendant had right to invoke social worker privilege under N.Y. C.P.L.R. §

4508 since, while outside of prison, he had come to the office of the social worker and paid a fee

for the services of the social worker, who had assured him that his communications would be

confidential); *Cmty. Serv. Soc'y v. Welfare Inspector Gen. of N.Y.*, 398 N.Y.S.2d 92, 94 (Sup.

Ct., New York Co. 1977) (granting motion to quash subpoena seeking information that sought

disclosure of communications protected by N.Y. C.P.L.R. § 4508, which protection arose

because petitioner had applied for assistance from Community Services Society, and expressly

agreed to become a client of and receive therapy from Community Services Society).

Although my conclusion regarding Plaintiff's breach-of-privilege claim against

---

95-CV-5351, 1999 U.S. Dist. LEXIS 20008, at *63-67 (S.D.N.Y. Nov. 18, 1999) (dismissing plaintiff's Section 1983 claim regarding disclosure by psychologist of information about plaintiff because psychologist was not plaintiff's private "treater" but was employed by city detention facility and, in any event, there was nothing improper about disclosure of information about plaintiff to appropriate authorities in order for her to receive necessary treatment); *cf. Schwimmer v. Kaladjian*, 92-CV-2376, 1995 U.S. Dist. LEXIS 11468, at *3 (S.D.N.Y. Aug. 14, 1995) ("[P]laintiff's [Section 1983] claims . . . arise under federal law, and therefore it is federal law that governs issues of privilege or confidentiality. . . .  Moreover, although we may give appropriate weight to any compelling state policy interests [such as those embodied in N.Y. C.P.L.R. § 4508], we must bear in mind that the overriding interest in a case involving allegations of constitutional torts is full disclosure of information that is pertinent to an assessment of the merits of the claims and defenses. . . .  Federal law does not itself contain any prohibition against discovery of social worker files.").

[52]         (*See* Dkt. No. 25, Mem. of Law, ¶¶ 40-41 [Plf.'s Response Papers].)

Defendants Smith and Schaubroeck needs no further support, my conclusion is further supported by the fact that some or perhaps most of the information about Plaintiff that was allegedly disclosed by Defendant Smith in violation of N.Y. C.P.L.R. § 4508(a) did not consist of "communications" by Plaintiff to his social workers–the only sort of information protected by N.Y. C.P.L.R. § 4508(a)–but *observations of Plaintiff's behavior* by Defendant Smith while Plaintiff was in the Justice Center.[53]   In addition, my conclusion is further supported by the fact that some or perhaps most of the information that Plaintiff alleges Defendant Schaubroeck disclosed about Plaintiff did not consist of Plaintiff's actual communications but *mischaracterizations* of those communications.[54]   Thus, some or perhaps most of Plaintiff's claim against Defendant Schaubroeck is more accurately construed as being premised on the state law tort of *slander* or *defamation*, which is not actionable under 42 U.S.C. § 1983.[55]

   With respect to Plaintiff's somewhat related publication-of-confidential-information claim against Defendant Schaubroeck (i.e., that he somehow caused Plaintiff to experience "severe public ridicule and ostrazation [sic] that could endure forever" through the *Syracuse*

---

[53]   (*See*, *e.g.*, Dkt. No. 10, ¶¶ 45, 46 [Plf.'s Am. Compl.].)

[54]   (*See*, *e.g*, Dkt. No. 10, ¶ 48 [Plf.'s Am. Compl., alleging that Defendant Massa's report, which was based on information from Defendants Smith and Schaubroeck, "wasn't truly indic[a]tive of reality"], ¶ 51 [alleging that "[t]he confidential commit [sic] was released out of it's [sic] whole context"].)

[55]   *See Venable v. Goord*, 03-CV-4434, 2004 U.S. Dist. LEXIS 18275, at *11-13 (S.D.N.Y. Sept. 10, 2004) (granting defendants' Rule 12[b][6] motion to dismiss inmate's slander claim based on disclosure of confidential information, in Section 1983 action); *Lewis v. City of New York*, 95-CV-5351, 1999 U.S. Dist. LEXIS 20008, at *63 (S.D.N.Y. Nov. 18, 1999) ("[I]n plaintiff's pleading, she appears to accuse Dr. Stern of disclosing false information, that is, misrepresenting some unidentified facts.  Such an allegation of falsehood does not appear to state a constitutional claim since the utterance of such false statements amounts to mere defamation . . .") [citation omitted].

*Post-Standard*'s alleged publication of confidential information about Plaintiff),[56] this claim is

also most accurately construed as being premised on the state law tort of slander or defamation,[57]

which (again) is not actionable under 42 U.S.C. § 1983.[58]  In addition, this claim labors under the

added defect of conspicuously failing to allege facts indicating the personal involvement of

Defendant Schaubroeck in the alleged constitutional violation.[59]

      Finally, with respect to Plaintiff's claim that Defendant Smith maliciously or negligently

"coerced" Plaintiff to take a "mind changing" medication called "Sinequan,"[60]  Plaintiff's

allegation that Defendant Smith did something wrong by aggressively encouraging Plaintiff to

take an anti-depressant/anti-anxiety medication[61] under the circumstances alleged is rather absurd

---

[56]    (*See*, *e.g.*, Dkt. No. 10, ¶¶ 50-51 [Plf.'s Am. Compl.].)

[57]    (Dkt. No. 10, "Second Cause of Action" [Plf.'s Am. Compl., alleging that the disclosure of the confidential information in question was done "in a slanderous and libelous manner"].)

[58]    *See*, *supra*, note 55 of this Report-Recommendation.

[59]    (*See*, *e.g.*, Dkt. No. 10, ¶ 50 [Plf.'s Am. Compl., alleging that the confidential information was released "Somewhere [sic]" by an unidentified person, and that Plaintiff was caused to experience "ridicule and ostrazation [sic]" by the actions of *Syracuse Post-Standard*].)

[60]    (Dkt. No. 10, ¶¶ 40-43, 52 [Plf.'s Am. Compl.].)

[61]    Sinequan® is a prescription medication recommended for the treatment of persons suffering from depressive or anxiety disorders.  *Physicians' Desk Reference* 2636-2637 (Thompson 58th ed. 2004).  The Court can take judicial notice of the nature of a prescription medication.  *See* Fed. R. Evid. 201; *see*, *e.g.*, *Edwards v. Sec'y of Dept. of Health and Human Servs.*, 572 F. Supp. 1235, 1238 (E.D.N.Y. 1983) (taking judicial notice of side effects of certain prescription medications); *Purkey v. Green*, 28 Fed. Appx. 736, 743, n.4 (10th Cir. 2001) (taking judicial notice of properties of prescription medication, based on description of medication contained in *Physicians' Desk Reference*); *Golden v. Berge*, 03-C-0403, 2003 WL 23221483, at *7 (W.D. Wis. Sept. 25, 2003) (taking judicial notice of indications for certain prescription medications, based on descriptions of medications contained in *Physicians' Desk Reference*); *Schar v. Hartford Life Ins.*, 242 F. Supp.2d 708, 711 (N.D. Cal. 2003) (taking judicial notice of

considering that Plaintiff, at the time, was experiencing what he himself described as either a

"psychiatric breakdown" or a "psychotic breakdown,"[62] and he was subsequently determined to

be mentally incompetent for a period of approximately thirteen months.[63]   In any event, I do not

even liberally construe this allegation as alleging anything more than that (1) Plaintiff disagreed

with the prescribed mediation,[64] and (2) that Defendant Smith was negligent in providing medical

care to Plaintiff.[65]   Such allegations are not actionable under 42 U.S.C. § 1983.[66]

　　　　For all of these reasons, I recommend that the Court dismiss Plaintiff's Second Cause of

Action for failure to state a claim.  Because Plaintiff has already been granted two opportunities

to amend this cause of action (through the filing of his Amended Complaint, and through the

liberal construction of his response papers as effectively amending the allegations of his

---

the indications for certain prescription medications, based on descriptions of medications
contained in *Physicians' Desk Reference*); *Adams v. U.S.*, 964 F. Supp. 511, 514, n.4 (D. Mass.
1996) (taking judicial notice of antianxiety medication).

　　　[62]　　　(*See*, *e.g.*, Dkt. No. 10, ¶¶ 32, 40 [Plf.'s Am. Compl.].)

　　　[63]　　　(*See*, *e.g.*, Dkt. No. 10, ¶¶ 21-26 [Plf.'s Am. Compl.].)

　　　[64]　　　(*See*, *e.g.*, Dkt. No. 10, ¶ 42 [Plf.'s Am. Compl., alleging that he was "shocked" at
the fact that Defendant Smith would encourage Plaintiff to take the medication at issue].)

　　　[65]　　　(*See*, *e.g.*, Dkt. No. 10, ¶ 52 [Plf.'s Am. Compl., alleging that Defendants Smith
and Schaubrock were "grossly negligent" in performing their duties to Plaintiff].)

　　　[66]　　　*See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician
has been negligent in diagnosing or treating a medical condition does not state a valid claim of
medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a
constitutional violation merely because the victim is a prisoner."); *Chance v. Armstrong*, 143
F.3d 698, 703 (2d Cir. 1998) ("It is well-established that mere disagreement over the proper
treatment does not create a constitutional claim.  So long as the treatment given is adequate, the
fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment
violation.").

Amended Complaint), and because the defects in this cause of action are substantive (and not merely formal), I recommend that this denial be with prejudice.  In addition, because this cause of action fails to state a claim and indeed is frivolous, I recommend that the Court indicate in the Order of Dismissal that this dismissal constitutes a "strike" for purposes of 28 U.S.C. § 1915(g)'s "three strikes" rule.

### 3.   Plaintiff's Third Cause of Action

As described above, Plaintiff's Third Cause of Action contains three somewhat distinct claims.  *See*, *supra*, Part II.C. of this Report-Recommendation. The problems that plague each of these three claims (which are against Defendants Ward and Massa) are many of the same problems that plague Plaintiff's claims against Defendants Smith and Schaubroeck in Plaintiff's Second Cause of Action, described above.  *See*, *supra*, Part III.A.2. of this Report-Recommendation.

With respect to Plaintiff's breach-of-privilege claim against Defendants Ward and Massa,[67] Defendants are correct that N.Y. C.P.L.R. § 4507 does not somehow transform the alleged disclosure of information about Plaintiff by two psychiatrists employed by the Onondaga County Justice Center into a violation of a right that is protected by any constitutional provision (or federal law) for purposes of 42 U.S.C. § 1983.[68]

N.Y. C.P.L.R. § 4507 provides, in pertinent part: "The confidential relations and communications between a psychologist . . . and his *client* are placed on the same basis as those

---

[67]     (Dkt. No. 10, ¶ 49 [Plf.'s Am. Compl.]; Dkt. No. 25, Mem. of Law, ¶¶ 6, 27-39, 44-51 [Plf.'s Response Papers].)

[68]     (Dkt. No. 22, Part 3, at 12-13 [Defs.' Mem. of Law].)

provided by law between attorney and *client*, and nothing in [N.Y. Education Law § 153] shall be construed to require any such privileged communications to be disclosed."  N.Y. C.P.L.R. § 4507 [emphasis added].

I do not even liberally construe Plaintiff's Amended Complaint as alleging facts indicating that he was the "client" of the two psychiatrists in question for purposes of N.Y. C.P.L.R. 4507.  In particular, I note that Plaintiff alleges that Defendants Ward and Massa were *employees* of Onondaga County Correctional Medical and Behavioral Health Services at the Onondaga County Justice Center,[69] where Plaintiff was *detained* (i.e., held against his will) during the time in question.[70]  Indeed, Plaintiff alleges that he was "forced to submit to the [competency] exam" against his will, and that Defendants Ward and Massa were acting on behalf of Onondaga County Court Judge William D. Walsh and/or Mental Health Department Commissioner David S. Brownwell.[71]  Moreover, Plaintiff attaches to his response papers the written evaluation of Defendant Ward, which states at the end of the first paragraph, "Mr. Ariola was informed that the evaluation was not confidential and that a report would be made to Judge Walsh.  He agreed to proceed."[72]  In addition, Plaintiff attaches to his response papers the written

---

[69]   (*See*, *e.g.*, Dkt. No. 10, ¶¶ 8, 9 [Plf.'s Am. Compl.].)

[70]   (*See*, *e.g.*, Dkt. No. 10, ¶¶ 3, 4 [Plf.'s Am. Compl.].)

[71]   (*See*, *e.g.*, Dkt. No. 10, ¶ 20 [Plf.'s Am. Compl., alleging that the competency exam was ordered by "Superior Court Judge William D. Walsh"]; Dkt. No. 25, Mem. of Law, ¶ 27 [Plf.'s Response Papers, alleging that "the Court ordered this evaluation"], ¶ 44 & "Appendix A" [alleging that Defendants Ward and Massa were acting on behalf of Mental Health Department Commissioner David S. Brownell, and that the competency exam was order by "the court"].)

[72]   (Dkt. No. 25, "Appendix A" [Plf.'s Response Papers].)  Because I liberally construe the assertions in Plaintiff's response papers as amending the allegations contained in

evaluation of Defendant Massa, which states at the end of the first paragraph, "Mr. Aroila was told that the information gathered in this [evaluation] process was not confidential and a report was to be issued to Judge Walsh.  Mr. Ariola agreed to continue with the evaluation in the presence of his lawyer."[73]  Simply stated, I can conceive of no circumstances (consistent with the allegations of Plaintiff's Amended Complaint) in which Plaintiff entertained a *reasonable* expectation of privacy with regard to any of the information in question.

With respect to Plaintiff's claim that Defendants Ward and Massa intentionally or recklessly *mischaracterized* Plaintiff's communications with them,[74] this claim is most accurately construed as being premised on the state law torts of *slander* or *defamation*, which (again) are not actionable under 42 U.S.C. § 1983.[75]

With respect to Plaintiff's claim that Defendants Ward and Massa are liable for relying on, or further disclosing, information obtained from Defendants Smith and Schaubroeck in

---

Plaintiff's Amended Complaint, I may also, and do also, construe the attachments to Plaintiff's response papers as amending the allegations contained in Plaintiff's Amended Complaint.  *See*, *supra*, note 22 of this Report-Recommendation.

[73]    (Dkt. No. 25, "Appendix A" [Plf.'s Response Papers].)

[74]    (*See*, *e.g*, Dkt. No. 10, ¶ 48 [Plf.'s Am. Compl., alleging that Defendant Massa's report "wasn't truly indic[a]tive of reality"], "Third Cause of Action" [alleging that Defendants Massa and Ward engaged in "fradulant [sic] and deceptive" conduct]; Dkt. No. 25, Mem. of Law, ¶ 30 [Plf.'s Response Papers, alleging that Defendants Ward and Massa "debased" Plaintiff's religious statements into statements supposedly indicating a mental illness], ¶¶ 45-46 [alleging that Defendants Ward and Massa acted "fraudulently"], ¶ 50 [alleging that the "reports by Dr. Ward and Dr. Massa clearly do not reflect what Plaintiff told them that day . . . ."].)

[75]    *See*, *supra*, note 55 of this Report-Recommendation.

violation of N.Y. C.P.L.R. § 4508 (the social worker privilege),[76] that claim fails for the reasons stated above in Part III.A.2. of this Report-Recommendation.  Specifically, because that information was not protected by N.Y. C.P.L.R. § 4508 in the first instance, any reliance on it or further disclosure of it by Defendants Ward and Massa could not, and did not, violate N.Y. C.P.L.R. § 4508.

The same analysis applies to Plaintiff's related claim that Defendants Ward and Massa are liable for relying on, or further disclosing, information obtained from Plaintiff's clinical records, which Plaintiff alleges was protected by N.Y. Mental Hygiene Law §§ 33.13, 33.16.[77] Setting aside the lack of any detail regarding what clinical records Plaintiff is referencing, Sections 33.13 and 33.16 did not protect any such records from disclosure under the circumstances alleged.  For example, Section 33.13 provided, in pertinent part:

> [The clinical records of] patients or clients . . . shall not be . . . public record[s] and shall not be released . . . to any person or agency outside of the offices [of mental health or mental retardation and developmental disabilities] except as follows: (1) pursuant to an order of a court of record requiring disclosure upon a finding by the court that the interests of justice significantly outweigh the need for confidentiality . . . [or] (7) with the consent of . . . someone authorized to act on the patient's or client's behalf . . . .

N.Y. Mental Hygiene Law § 33.13(a),(c)(1).  Thus, numerous problems exist with regard to Plaintiff's claim of privilege under Sections 33.13 and 33.16: (1) he has failed to allege facts indicating that he was a "patient" or "client" of Defendants Smith, Schaubroeck, Ward or Massa for purposes of the N.Y. Mental Hygiene Law; (2) in any event, Defendants Ward and Massa

---

[76]       (Dkt. No. 10, ¶¶ 47-49 and "Third Cause of Action" [Plf.'s Am. Compl.]; Dkt. No. 25, Mem. of Law, ¶¶ 27, 44 [Plf.'s Response Papers].)

[77]       (Dkt. No. 25, Mem. of Law, ¶¶ 27, 29, 48, 49 [Plf.'s Response Papers].)

were entitled to review and rely on Plaintiff's clinical records since they were not persons

"outside of the office[] [of mental health]" but employees of that office, as alleged by Plaintiff;[78]

(3) in any event, the disclosure of Plaintiff's clinical records was authorized (and indeed ordered)

by Onondaga County Court Judge William D. Walsh, as alleged by Plaintiff;[79] and (4) in any

event, the disclosure was made with the consent of (and indeed at the request of) Plaintiff's

representative--i.e., his lawyer at the time, Thomas Miller--as alleged by Plaintiff.[80]  One of the

main problems with Plaintiff's claim is the fact that the information about Plaintiff that was

disclosed was not disclosed in order to prosecute Plaintiff but to determine whether or not he was

competent to stand trial.

With respect to Plaintiff's claim that Defendants Ward and Massa were negligent in

providing medical care to Plaintiff, I note that this claim appears to make up the majority of

---

[78]     (See, e.g., Dkt. No. 10, ¶¶ 6-9 [Plf.'s Am. Compl.].)  I note that, pursuant to N.Y.
Mental Hygiene Law § 33.13, the term "office of mental health" includes the offices of "each
facility licensed or operated by the office of mental health."  Mental Hygiene Law § 33.13(a).

[79]     (See, e.g., Dkt. No. 10, ¶ 20 [Plf.'s Am. Compl., alleging that the competency
exam was ordered by "Superior Court Judge William D. Walsh"]; Dkt. No. 25, Mem. of Law, ¶
27 [Plf.'s Response Papers, alleging that "the Court ordered this evaluation"], ¶ 44 [alleging that
the competency exam was order by "the court"], "Appendix A" [attaching a copy of the final
examination report, which states in three different places that the examination was ordered by
Judge Walsh].)

[80]     (See, e.g., Dkt. No. 10, ¶¶ 20, 44 [Plf.'s Am. Compl., alleging that his assigned
counsel did not follow his order not to disclose the information at issue]; Dkt. No. 25, Mem. of
Law, ¶ 12 [Plf.'s Response Papers, alleging that, between March of 2001 and August of 2001,
Plaintiff's "criminal counsel was an adversary party against Plaintiff, violating Plaintiff's
Constitutional rights even worse then [sic] the defendants in this cause of action"], ¶ 44 [alleging
that his assigned counsel "request[ed] [the] psychiatric exam"], "Appendix A" [attaching copies
of the two evaluation reports, which indicate that Plaintiff's attorney, Tom Miller, was present
during the evaluation].)

Plaintiff's Third Cause of Action.[81]  However, as explained above, allegations of negligence are not actionable under 42 U.S.C. § 1983.[82]

Finally, with respect to Plaintiff's free-exercise claim under the First Amendment, this claim is not cognizable, as alleged.[83]  Plaintiff's claim does not allege any facts indicating an

---

[81]     (*See*, *e.g.*, Dkt. No. 10, ¶ 47 [Plf.'s Am. Compl. alleging that Defendant Massa "failed in his duties as an independent Psychiatrist" and made the competency report "negligently"], ¶ 48 [alleging that Defendant Massa "negligently made the [competency] report"], ¶ 49 [alleging that Defendant Ward was "negligent" in conducting Plaintiff's competency exam], ¶ 52 [alleging that Defendants Ward and Massa were "grossly negligent" in conducting Plaintiff's competency exam], "Third Cause of Action" [alleging that Defendants Ward and Massa were "grossly negligent" in performing "their duties as professional Psychiatrist's [sic]"]; Dkt. No. 25, Mem. of Law, ¶ 6 [Plf.'s Response Papers, alleging that Defendants Ward and Massa breached their duty "to exercise the proper care and ordinary skill of a professional" in conducting Plaintiff's competency exam], ¶¶ 28-29 [alleging that Defendants Ward and Massa failed to exercise "ordinary skill and care" in relation to Plaintiff], ¶ 30 [alleging that Defendants Ward and Massa failed to "exercise the ordinary skill that a professional psychiatrist should have"], ¶ 45 [alleging that Defendants Ward and Massa breached their duty to exercise "ordinary care" in conducting Plaintiff's competency exam], ¶ 46 [alleging that Defendants Ward and Massa were "grossly negligent"], ¶ 47 [alleging that Defendants Ward and Massa breached their duty of "exercis[ing] ordinary skill and care in the [competency] exam"], ¶ 49 [alleging that Defendant Massa breached his "duty" to Plaintiff to conduct a "fair, unbiased and unprejudicial" competency exam], ¶ 51 [alleging that Defendants Ward and Massa breached their duty of "exercis[ing] ordinary skill and care in conducting Plaintiff's [competency] exam"].)

[82]     *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

[83]     (*See*, *e.g.*, Dkt. No. 10, ¶¶ 40, 51 [Plf.'s Am. Compl., alleging that Defendants mischaracterized Plaintiff's religiously motivated statement that his father was still spiritually alive]; Dkt. No. 25, Mem. of Law, ¶ 30 [Plf.'s Response Papers, alleging that Defendants Ward and Massa violated Plaintiff's First Amendment right to freely exercise his religion when they "stoped [sic] all religious statements from being said and the ones that were said they debased

*infringement* by Defendants of any religious belief held by Plaintiff.  In addition to failing to indicate how Plaintiff was "stopped" from uttering any beliefs that could be deemed to be religious in nature, Plaintiff's claim fails to indicate how the stopping of such utterances was *caused* by Defendants.  In particular, I note that Plaintiff attaches to his response papers the two evaluation reports authored by Defendants Ward and Massa; far from basing their conclusions of incompetency on any religious beliefs uttered by Plaintiff, Defendants Ward and Massa based their conclusion of incompetency on other statements by Plaintiff, such as (1) Plaintiff's statement that he was not in jail but "a place where he was being studied through the vents by 'they,'" (2) Plaintiff's statement that one of the deputies "was his father in disguise," and (3) Plaintiff's inability to "talk about possible defenses or defense strategies because he clearly thought there was no case to defend."[84] Moreover, even if Plaintiff's claim could somehow be construed as indicating some sort of infringement by Defendants, the claim can only be reasonably construed as alleging that the challenged conduct at issue (i.e., Defendants interpreting Plaintiff's alleged statements about his father being alive) furthered a legitimate penological objective–namely, determining whether Plaintiff was mentally competent to stand trial.

For all of these reasons, I recommend that the Court dismiss Plaintiff's Third Cause of Action for failure to state a claim.  Because Plaintiff has already been granted two opportunities

---

[sic] into a mental illness, which in of it self [sic] wasn't true at all"].)

[84]      (Dkt. No. 25, Mem. of Law, "Appendix A" [Plf.'s Response Papers].)  Again, because I liberally construe the assertions in Plaintiff's response papers as amending the allegations contained in Plaintiff's Amended Complaint, I may also, and do also, construe the attachments to Plaintiff's response papers as amending the allegations contained in Plaintiff's Amended Complaint.  *See*, *supra*, note 22 of this Report-Recommendation.

to amend this cause of action (through the filing of his Amended Complaint, and through the liberal construction of his response papers as effectively amending the allegations of his Amended Complaint), and because the defects in this cause of action are substantive (and not merely formal), I recommend that this denial be with prejudice.  In addition, because this cause of action fails to state a claim and indeed is frivolous, I recommend that the Court indicate in the Order of Dismissal that this dismissal constitutes a "strike" for purposes of 28 U.S.C. § 1915(g)'s "three strikes" rule.

### B.      Alternative Grounds for Dismissal

Because I have concluded that adequate grounds exist warranting dismissal of Plaintiff's Amended Complaint, I need not, and do not, address Defendants' remaining arguments for dismissal.

### C.      Plaintiff's Motion for Subpoena, Motion for a Stay, and Motion for Counsel

Also pending before the Court are (1) Plaintiff's motion for a subpoena and/or order directing service of Plaintiff's Amended Complaint on Defendant Massa (Dkt. No. 24), (2) Plaintiff's motion for a stay of the Court's decision on Defendants' motion to dismiss (Dkt. No. 23), and (3) Plaintiff's motion for the appointment of counsel (Dkt. No. 23).

With regard to Plaintiff's motion for a subpoena and/or order directing service, I deny that motion as moot.  Specifically, I note that not among the five arguments for dismissal advanced by Defendants is an argument that Plaintiff's claims against Defendant Massa should be dismissed for a failure to serve.  As a result, I conclude that this argument has been waived, that Defendant Massa has accepted service of Plaintiff's Amended Complaint through counsel, and that Defendant Massa has submitted to the jurisdiction of the Court.

With regard to Plaintiff's motion for a stay, I deny that motion as moot.  The asserted ground in support of the motion for a stay was to give Plaintiff time in which to serve his Amended Complaint on Defendant Massa.  Because Plaintiff has already served his Amended Complaint on Defendant Massa, his reason for requesting a stay no longer applies.

Finally, with regard to Plaintiff's motion for appointment of counsel, I deny that motion based on mootness and a lack of showing of cause.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 22) be **GRANTED**, that Plaintiff's Amended Complaint (Dkt. No. 10) be dismissed **with prejudice**, and that the Court's Order of Dismissal indicate that the dismissal constitute **a "strike"** for purposes of 28 U.S.C. § 1915(g) for the reasons stated above in this Report-Recommendation; and it is further

**ORDERED** that Plaintiff's motion for a subpoena and/or order directing service of Plaintiff's Amended Complaint on Defendant Massa (Dkt. No. 24), Plaintiff's motion for a stay of the Court's decision on Defendants' motion to dismiss (Dkt. No. 23), and Plaintiff's motion for the appointment of counsel (Dkt. No. 23) each are **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: September 11, 2006
      Syracuse, New York

George H. Lowe
United States Magistrate Judge